Case number 3190779 Christopher Stafford versus the Board of Trustees of the Crest Hill Police Pension Fund. Mr. Carlson. Good morning, your honor. Good morning. You may proceed at any time. Thank you. May it please the court. Good morning to the justices and to Mr. Mazzoni. My name is Keith Carlson. I represent the Crest Hill Police Pension Board in this matter. Christopher Stafford, in this case, applied for a disability pension almost immediately before he was walked out the door and terminated. Instead, he chose to resign pursuant to an agreement. The Pension Board, after hearing much evidence, considering thousands of was entitled to a non-duty disability benefit under the Illinois Pension Code, largely focusing on the issue of whether or not he had proved that his disability was caused by an act of duty. The board denied the line of duty benefits because his injury was largely caused by non-police stressors. Today, the party's disagreement largely focuses on the issue of causation, a question of fact. Under Illinois Supreme Court standards, as well as the rules of this court, questions of fact are reviewed on the manifest way to the evidence standard. The court is obviously well aware of it, having considered numerous pension cases and other cases, but the manifest way to the evidence standard, and regardless of the standard adopted by the court, the plaintiff, Mr. Stafford, bears the burden of proof. And under that burden, for the plaintiff to prevail on appeal, he must meet the same burden as an advocate trying to overcome a jury's verdict. Under the manifest way to the evidence standard, pursuant to the Supreme Court's ruling in Marconi, there only must be some competent evidence in the record in order for the pension board to prevail. Marconi distilled the issue before this court today even further, stating that a single doctor in a psychiatric police disability case is enough for a pension board to deny a line of similar facts to the facts presented to the Supreme Court in Marconi. Dr. Reff was the doctor relied upon by the pension board here. Out of the doctors, they found him to be the most convincing. They spent great time in their decision in order, explaining why they found Dr. Reff convincing. Dr. Reff specifically found that Officer Stafford's disability, and I'll read from C-1542 of the record, quote, I do not believe that Mr. Stafford, if mentally disabled, is disabled because of either a specific identifiable act of police work or the general nature of being a police officer. That states pretty clearly here that the causation standard was not met. The pension board is free to, like a jury, to evaluate the evidence put before it. In this case, they did so. They evaluated the evidence. They considered all of it. And after considering the evidence, they found Dr. Reff's report to be the most convincing. Therefore, they held because it was not, his disability was not caused by a specific identifiable act of police work as commanded by this, the Supreme Court in Robbins and followed by this court in both Coyne and Prodzik, or even the general nature of police work. He found that neither occurred. So before we even get to the legal standards and the variety of newer cases that have come out recently regarding the causation standard, this is a factual question. The factual question the pension board is the sole determiner of, and as such, the pension board, when it weighed all of the evidence, found Dr. Reff convincing, found in his favor, and just like the Supreme Court case in Marconi, found a single doctor to be convincing enough to make their decision. And then- Why did Reff, excuse me, Mr. Rosen, why did Reff change his mind? Dr. Reff spent considerable time in his report explaining, he said on page C1540 that he talked about the reasons why he explained that, that it was based upon the additional information that he was provided after, between his first and second opinion, which also a substantial amount of time had passed. He was given additional work records. He was given additional internal affairs investigation records. He was given a variety of things. And he talked about that and said that he changed his opinion based upon those, that additional information. So when he was given additional information, like any expert, the opinion is based upon the information they're given. Upon being given additional information, he made a different conclusion. So as such, Dr. Reff was well within his rights to do that, as he was the person who was examining him. He's a board certified psychiatrist, excellent and impeccable records. And he was the only one that took into account the narcotics abuse by the plaintiff. It was the only one that took into account a variety of other factors. The pension board, in its opinion, found him to be the most thorough and credible. Did Dr. Tudor and Dr. Frank have the same information that Dr. Ruff had that he was given later when he changed his opinion? Yes, they were all given the same records. You're just claiming that Ruff's first opinion was before the record was complete, that the other doctors relied on? Yes. Dr. Ruff, Dr. Tudor and Dr. Frank were all given the same records. Then a long time had passed, more records became known of by the council for the pension board, at which point we gathered those records and shared all of them with all three examining physicians again, at which point all of them issued supplemental reports. So the supplemental report that was changed was Dr. Ruff's report. Dr. Ruff changed his conclusion. That's correct. And again, I think that that highlights what is a clear question of fact is weighing that evidence. And under Marconi, that question is left to the pension board and under the manifest weight of the evidence standard, the pension board only has to point to some I'm sorry, at some point, I have lost the standard of review. I don't know whether I've missed a case where there's been a change, but the Administrative Procedure Act, which codified the common law, said that if there was any evidence in the record that supported the board's decision, we had to go with that decision. But manifest weight of the evidence requires some balancing of the of the interests. Has that changed? Your Honor, I can only cite to Marconi, which is the most on point case in the most recent Supreme Court case, which states that as long as there is some competent evidence in the record, then under the manifest weight evidence of the evidence standard pointing to the administrative review law, that was sufficient to be able to sustain the pension board's opinion. I am not aware of anything that has changed that standard, nor am I aware of the statute being amended to change the prima facie true and correct standard. Is there a clearly erroneous standard floating around out there somewhere? There is, I think if we get to the second part of the analysis here, I think it's an excellent point. So if you transition into when we start arguing about which standard this court should aggravation of a pre existing condition or cumulative effects or anything other than a single cause is enough, or whether this court should stick with its reasoning that it applied in project regarding police cases, or whether it should adopt the Miller case, which is which also follows the this court's analysis and project and Robbins, or whether or not you should take the more recent first district case that Mr Mazzoni supplemented the record with a, uh, regarding, uh, Sardo versus Franklin park. I think when we get to that point, that is a clearly erroneous standard that we would be arguing over because at that point we're asking you to mix fact and law. I am saying that we don't even get to that point because the factual under any of those standards, as long as you point to one doctor that says, no, it's not caused by police work. And that's what dr ref said, dr ref said that this was not solely caused nor is it generally caused. And that's enough for the pension board to avoid that analysis. But if the court goes into that analysis, certainly it's our position that the court should stick with its reasoning. Most recently that it articulated in project regarding police cases, when it went into a detailed analysis, talking about how its outcome would be different if project were not a fire case, if it were a police case and also the way that it articulated itself, uh, and its position, uh, in, uh, coin one, the, uh, three 47 left third seven one three. I only go through the process of making the citation there because there are two coin cases that this court has considered. Um, in that case, they also said that aggravation of preexisting condition or that cumulative effects would not be sufficient to meet active duty, um, under the pension code. So if you look at project and coin that this court has held, um, cases that some of you, uh, were involved in deciding, um, and also you look at Miller from the first district, as well as the case from the Supreme court that started all this Robbins. We believe that the established case law with exception of the outlier of Sardo says that psychiatric disability cases must, uh, the plaintiff in order to prove their entitlement to a psychiatric disability case must prove, um, that it was a sole and independent cause. And I think when you get to that part of the analysis, that would be a clear, uh, clearly erroneous standard, um, that they would apply. Okay. In some, we ask that you affirm the pension board's decision, uh, awarding a non-duty disability. And, um, I'll reserve the remainder of my time for rebuttal, please. You'll have five minutes for rebuttal. Um, and thank you for your argument. Uh, Mr. Mazzoni. Um, uh, may it please the court, uh, madam and Mr. Justices, Mr. Carlson and former officer staff from my office. Um, my, my analysis of this, of this case, my, my argument in this case is more of a pragmatic argument. Um, the first goes to Dr. Ref, uh, Dr. Ref's initial opinion, uh, was on, uh, board exhibit eight. And he found without question PTSD post-traumatic was a sole, uh, cause and that it was a result from the December 11th, uh, 2010 on paragraph seven, on page nine of his, of his opinion, the board, once they received all of these opinions, and I'll remind this court that I need to, there was an intervention by the city. Well, in my experience, uh, employers intervene in these cases when there's the risk of having to pay health insurance to an effective officer as a result of the award of a duty related disability on the placebo. Uh, they didn't take much of an active role. They adopted most of, uh, the, the board's rulings and the boards, this and the boards that they're not here today. Uh, so they're along for the ride just to make sure that they can, uh, to protect their, their, their exposure to this health insurance. When the opinions came out of these three doctors, uh, the pension board sought to supplement the record with documents that were already in their possession. There was argument at the original hearing concerning my client's disciplinary record, the shooting that he was involved in, uh, the treatments he was receiving all in the record. And so some months afterwards, in this case, I will tell all of you took years to get to fruition, probably three or four years, change of attorney, uh, just delay after delay, after delay. So all of these records were there. They're all dated. You could see the, the doctor ref supplemental report making reference to all these records were dated in 2014. Um, and prior to his report of December 1st, 2015, um, in his second opinion, uh, Dr. Ref, this is the doctor that now they think is the, uh, he's the guy that we're going to ride in the camp with. So he gives his second opinion, which is dated December 14th of 2017. He talks about a psychiatric exam, but he dated to December 3rd, 2015. Yet his opinion is dated December 1st of 2015, one of, uh, several errors, uh, in the report, but I would point to paragraph seven. Um, he gave an opinion that said, it is my opinion that Mr. Stafford's condition of P S PTSD did not cause him to be totally unable to perform his duties as a police officer. So even in his second opinion, uh, I think kind of self to the city's, uh, desire even qualifies the PTSD. The sorrow case now changes. I think it changes the way that we look at these things because it used to be, it has to be a specific event. Uh, but during the course of this hearing, and I apologize for jumping around, but you have all the briefs, you have the records and I'm sure you're familiar with them. So I just want to exhibit 19 of the board exhibits. Dr. Pulse is a 40 year psychologist who testified for free on behalf of officer Stafford, former officer Stafford for the sole purpose of trying to educate us and the board as to what PTSD is. What are the symptoms? What are the results? The board argues that, uh, my client had a drug problem. Those were all in the records. None of the doctors raised it. There was nothing hidden. The board talks about in their decision and in their argument about the fact that, um, maybe this incident happened. Maybe it didn't, they didn't call any witnesses. They didn't try to prove or disprove it, but there's evidence of the record, uh, in the briefs and in the doctor's reports that the time of the incident on December 10th, which was the, which was the, uh, the causation the foundation of this is that they had witnesses that heard more than four shots and officer Stafford had testified that he had discharged his weapon four times, uh, in fear for his life, a snowy night, foot chase, uh, having been a police officer myself for a number of years, these things happen at some officers handle them and some do not. And officer standard officer Stafford did not. You have, so you have the board now coming to you saying we have the ability to rely on all the doctors and the best doctor we can rely on is the one who changed his mind. Uh, after we gave him simply disciplinary records, that's the, that was the crux of the supplemental, uh, transmission to the, to all three doctors were all records of discipline. And this is after the PTSD has been identified and diagnosed. Uh, this is when other things were happening to officer Stafford. Uh, and, and all of the other doctors simply said, you know, we got these records, but our original opinion stand except for Dr. Ref and Dr. Ref even qualifies the guy who changes his mind qualifies him by saying he still thinks this is not totally disabling him, but we have to read to the converse, which means that the PTSD still has a partial. I'm asking you to take the entire record. I'm asking you to look at this record. The, the circuit court was very, very clear in reversing, uh, the, the board's decision, um, while taking a significant period of time, uh, while basing it on one doctor that, that didn't, uh, that changed his mind based upon disciplinary records. Um, the, the entire record supports, they talk about him not being truthful, but they say it's a facial issue or it's a body language. He told the truth. He was asked questions. They may not have liked some of his answers, but they were bluntly, uh, truthful, uh, the issue that we don't have a, a nexus or this cause of this, of this PTSD. We do all of the doctors agree. All of them agree that it was December 10th, uh, that caused, uh, hit this shooting incident that he was involved in caused the PTSD. And it was a spiral downhill from there. There are no records predating December 10th at any significance. Uh, there's some argument that was made by the board that while he, he functioned very well for a few years after this, look at Sardo, a decorated war veteran functioned for a number of years at the utmost highest levels. Uh, the board never brought in his commendations for officer staff, former officer staff, but he had those afterwards. This mirrors Sardo and in Sardo, we now expand this definition of the causation. It can be a culmination. There was argument in the brief and there was argument before the board, uh, that, that this cannot be a culmination of, of, uh, of events or, or effects that caused the disability. It has to be one particular incident. Well, we do have that. We also have other things occurring in this officer's life during that time that caused him to spiral even more downhill. So if you read Dr. Ref's second opinion, which I, again, I believe is, is kind of self-serving to this, to the city as an intervener. Um, it's not the opinion that I think anyone would want to rely on. It's someone who has changed their mind based on mostly non-medical, uh, supplemental, uh, information into the record. Uh, so we have that issue. Um, we have all of the records that were available. The board offered no witnesses at, at the hearing. The, the officer testified that when he had discharged these four shots, his gun jammed, he didn't know where the bad guy was. He didn't know whether he's going to be shot at. And that's, he has his nightmares and it's, and it's very clear on the record that that officer Stafford was significantly emotionally and mentally affected, uh, by that incident. Uh, we have, um, you know, the, the board relies heavily on Miller. And I think that, that the Sardo case kind of takes away that argument. I'll go back to Dr. Pulse for a minute as an uncompensated witness. Dr. Pulse, his, his resume is replete and his testimony was replete with his treatment of veterans, uh, police officers who were involved in PTSD. He was completely discounted by the board and their reply rate. You should not even, uh, accept anything that he has to say as, as having anything to do with whether the board should or should not grant. And he was brought there as I recall, other than, uh, officer Stafford, uh, Dr. Pulse was the only other witness that testified at this hearing. So I, I, I think that, um, you know, I'm running through these things. I have all these things to say, but then when we come up here, you know, they talk about the drug addiction, but there's, and that was in the record. And it's also in their briefs, not proven. And most of it occurring after December 10th. Um, but most importantly, the records of all of his treating physicians, everyone who was prescribing his medications were all in the records. None of the doctors had any problems with it. None of them raised the issue that there's a risk that this man might be, uh, might have an opioid addiction. And he was treated for many injuries, both duty and non-duty related during the course of his life. Um, and I think that's probably all I want to say because I'm hitting you, uh, pardon me. I am presenting to you, uh, what I think are the most poignant parts. I think for the, for the city to come in and for the pension board to come in and say, we're relying on Dr. Ref. I think Dr. Ref is probably the weakest of the three doctors, uh, because he was changing his opinion, uh, based upon non-medical, uh, supplement of the record. So based on that, uh, and, and again, may have placed the court with all due respect. I'd asked that the decision of the court be affirmed, uh, and that this officer go forward with a duty related pension. And that's, um, are you saying that, um, the evidence is against the manifest, right? Is the evidence of the board? Absolutely. Absolutely. The, the, they based it on Dr. Ref, the evidence would clearly supports a duty related pension based upon this officer's, um, being affected by the shooting incident was involved in. And again, the spiral that occurs at that point and just goes downward from there. So the decision was against the manifest manifest weight. And sir, I would also tell you it's in my, um, in my reply brief, I had, I had pointed out this prima facie and the argument about the prima facie evidence. And that was, um, that was raised, uh, prima facie it's presumed to be true unless it's disproved by some evidence to the contrary. So you can't pick a, an opinion by Dr. Ref again, this, that's what this is based upon. Uh, the, I don't know that they have any argument or any standing to say that the officer was untruthful or that the incident didn't take place. I don't think they can argue that the facts are unrebutted. So when you get to this kind of patient true and correct, they're simply relying on the amended opinion of Dr. Ref, which is ambivalent, uh, as it regards the PTSD, everyone diagnosed PTSD of this officer at the very beginning, they continue to diagnose it. Two of the doctors did not modify. And even Dr. Ref in his amended opinion continues to say that PTSD had some effect on the disability of this officer. So even he does not discount or say that he was wrong completely. He continues consistently with that. So yes, sir, I believe that the decision was clearly against the manifest way to the evidence. So are you saying the state of the law, Mr. Bozzone is that as long as, uh, the incident was a causative factor in his condition of ill being that that's sufficient to warrant a line of duty pension? When the incident caused the PTSD and the evidence of the spiraling down of depression and nightmares, et cetera. Uh, yes, sir. I believe that that single incident, uh, is enough. Although Sardo now says that, you know, uh, additional, um, effects that are additional incidents or, or, or experience of the officer can be taken into consideration now, but I do believe that even under the old law, that December 10th incident was enough based upon, and it was enough for all three doctors, Mr. Justice originally, it was all, it was enough for all three doctors to say PTSD, December 10th incident was the cause of it. Okay. Thank you. Yes, sir. Uh, and, and a pleasure to be with you, even though on zoom appreciate your time. This is really a Yes, it is. Thank you, Mr. Yes, sir. Mr. Yes, your honor. Mr. Could you address my last question? I posed to Mr. Mazoni. Certainly your honor. Um, I agree with Mr. Mazoni. And one thing that, uh, Sardo is a change from the existing law that it is new law instead, uh, I ask you to stick to the two cases you wrote, which are coin one and Prodzik. And in Prodzik, you wrote, um, and I would encourage you to, as we in part, you know, going forward for, since 2019, our clients have relied upon these things. Um, you wrote relying on Robbins to establish eligibility for a line of duty pension under the stricter standard prescribed for police officers. A police officer must establish that the disability is a result of a specific identifiable act of duty, unique to police work clarifying further. You wrote in other words, the stress alleged to be disabling must result entirely from a specific identifiable active duty that is unique to police work. And that involves a special risk, not confronted by members of the subverse from, uh, a condition that is in part caused by, or a contributed to by the line of duty action. However, that is not the factual question that was reached by the board. I understand at the beginning of Mr. Mazzoni's argument, he began by saying, what was the factual question reached by the board? I'm sorry, what, what was the factual question reached by the board? The factual question reached by the board is that, or the finding made by the board, I think it's probably the easier way for me to state it is that the, um, complained of incident was not a contributing factor to his disability. Um, that specifically Dr. Ref found that his disability was not caused by a specific identifiable incident or by the at the beginning of his analysis, Mr. Mazzoni invited you to engage in a pragmatic exercise. And unless pragmatic is code for please reweigh the evidence throughout his argument, counsel for the plaintiff made statements like, I think Dr. Ref is the weakest. He also stated things like, um, uh, the, uh, I don't think it's an opinion anyone should rely on. We agree that Mr. Mazzoni would have voted differently. If you were a pension fund trustee for the police pension board in, uh, crest Hill, but that's not the standard. The references to the trial court are almost irrelevant for this court's purposes. What is the standard? Repeat it. What is it from your perspective? The standard for us is that it must be a soul, uh, an independent cause or more important than what I think your honor, what you wrote is that in other words, the stress to be disabling must result entirely from a specific identifiable act of duty. That is unique to police work and involves a special risk not confronted by members of the general public. In other words, you, along with the first district in the Miller case have the same approach. And largely it was the same thing you wrote in coin one, when you wrote that it was a constellation of factors or, or the accumulation of factors over a career insufficient, it must be a specific identifiable incident. And what, where do we get that from? We get that from the Supreme court and Robbins and Robbins makes very clear. It must be a specific identifiable incident for psychiatric disability cases. So I think that Sardo, um, I appreciate that Mr. Mazzoni was, um, blatantly honest when he said that it's new law that when these five two appointed members of the city made this decision, they did so in good faith and using the manifest way to the evidence. It is important note. The pension board made this decision, an independent body, not the city. Dr. Ref was hired by the pension board through a blind third intermediary. They didn't pick this doctor by name or by reputation. He was assigned randomly. The city had no input on the selection of doctors. They had no input other than the arguments they at the hearing about what, um, they felt things should be done. It was the pension boards independent judgment. They found that, uh, that Dr. Ref was the most convincing and that Mr. Stafford's disability was not caused to cause by or contributed to by an active duty. And therefore, uh, the court should affirm the pension board's decision because the pension board, uh, followed rules and had more than sufficient evidence in the record to support its opinion. Therefore, we ask you to affirm. Thank you, Mr. Charles. Thank you both for your argument today. You're going to take this matter under advisement to pass you as a written decision.